## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 24 2017, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. Mackenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Willie Dixon,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | April 24, 2017<br><br>Court of Appeals Case No.<br>49A02-1606-CR-1400<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Steven Rubick, Magistrate<br><br>Trial Court Cause No.<br>49G07-1511-CM-40734 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Willie Dixon appeals his conviction for resisting law enforcement, challenging the sufficiency of the State's evidence. We affirm.

# Facts and Procedural History

[2] On the night of November 16, 2015, Indianapolis Metropolitan Police Department Officer Babacar Diouf responded to a report of a man (Dixon) pushing a lawnmower down the middle of Kessler Boulevard East Drive just west of Binford Boulevard, a busy stretch of road in northeast Indianapolis. Officer Diouf pulled his car alongside Dixon and spoke with him, telling him that "he was putting his life in danger, also putting other motorists in danger as well for being in the middle of the road." Tr. p. 5. Officer Diouf asked Dixon to walk on the side of the road, and while Dixon initially took the position that walking down the middle was actually safer because of curves in the road, he eventually agreed to stay on the side (there were no sidewalks along the relevant section of road).

[3] After Officer Diouf helped Dixon through an intersection, however, he saw that Dixon had returned to walking in the middle of the road. This prompted Officer Diouf to approach Dixon with his lights on and give him a "clear command" to be on the side of the road. *Id.* at 6. Instead, Dixon "took off," "[r]unning, pushing the mower in the middle of the road." *Id.* at 6-7. Officer Diouf "advised him to stop," *id.* at 7, but Dixon kept running. Officer Diouf

then pulled his car in front of Dixon "to try and cut him off." *Id.* Dixon stopped momentarily before running around the car and continuing down the road. Officer Diouf followed Dixon on foot and told him he would be tased if he did not stop. Hearing this, Dixon stopped, and Officer Diouf arrested him.

[4] The State charged Dixon with resisting law enforcement by fleeing as a Class A misdemeanor. After a bench trial at which Officer Diouf and then Dixon offered their versions of events, the trial court found Dixon guilty as charged and sentenced him to the time he had already served.

[5] Dixon now appeals.

# Discussion and Decision

[6] Dixon challenges the sufficiency of the evidence supporting his conviction. In considering such a claim, we consider only the probative evidence and reasonable inferences supporting the conviction. *Wilson v. State*, 39 N.E.3d 705, 716 (Ind. Ct. App. 2015), *trans. denied*. We do not reweigh the evidence or assess witness credibility. *Id.* We consider conflicting evidence most favorably to the conviction. *Id.* We will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* The evidence is sufficient if an inference may reasonably be drawn from it to support the judgment. *Id.*

[7] In order to convict Dixon of resisting law enforcement by fleeing as a Class A misdemeanor, the State was required to prove beyond a reasonable doubt that Dixon knowingly or intentionally fled from Officer Diouf after Officer Diouf, by visible or audible means, including operation of his siren or emergency lights, identified himself and ordered Dixon to stop. *See* Ind. Code § 35-44.1-3-1(a)(3). Dixon argues that "he did not hear Officer Diouf order him to stop" and that, even if he had, he had "no duty to stop" because "he had done nothing wrong[.]" Appellant's Br. pp. 11, 14. We address each argument in turn.

[8] There are two problems with Dixon's claim that he did not hear Officer Diouf order him to stop. First, in light of Officer Diouf's testimony that he "advised [Dixon] to stop," Dixon's claim is a request for us to reweigh the evidence, which we will not do. *See Wilson*, 39 N.E.3d at 716. Second, even if we were to assume that Dixon did not hear Officer Diouf's order, it is undisputed that Officer Diouf then pulled his car in front of Dixon "to try and cut him off." Tr. p. 7. This, alone, constituted an order to stop under the resisting statute, which provides that such an order can be given "by **visible or audible** means." I.C. § 35-44.1-3-1(a)(3) (emphasis added).

[9] Dixon's argument that he had "no duty to stop" relates to our Supreme Court's decision in *Gaddie v. State*, 10 N.E.3d 1249 (Ind. 2014). There, the Court held that even though the text of the resisting-by-fleeing statute does not include a requirement that the order to stop be lawful, the statute must be construed as such "[t]o avoid conflict with the Fourth Amendment." *Id.* at 1256. In other

words, the statute must be "understood to require that such order to stop rest on probable cause or reasonable suspicion, that is, specific, articulable facts that would lead the officer to reasonably suspect that criminal activity is afoot." *Id.* at 1255. Seizing on the term "criminal activity," Dixon contends that Officer Diouf's order to stop was not lawful because Dixon had at most committed a "traffic infraction" under Indiana Code section 9-21-17-14, which requires a pedestrian walking on a road to keep to the side. What Dixon fails to acknowledge, however, is that a police officer's observation of a traffic violation provides the requisite probable cause or reasonable suspicion to justify a stop. *State v. Keck*, 4 N.E.3d 1180, 1184 (Ind. 2014). In short, "criminal activity," for purposes of *Gaddie*, includes traffic infractions. Given the fact that Dixon was violating Section 9-21-17-14, his argument that he did not have a duty to stop when Officer Diouf ordered him to do so necessarily fails.

[10] Affirmed.

Bradford, J., and Brown, J., concur.